ARTHUR J. CALLOWAY, APPELLANT, V. EDITH DOTY ET AL.,
APPELLEES.
EDITH LAIR, APPELLEE, V. ARTHUR J. CALLOWAY,
APPELLANT.

FILED APRIL 11, 1922. NOS. 21944, 21945.

1. Judgment: NUNC PRO TUNC ENTRY. "If, in any proceeding pend-
ing in a court, a judgment is actually pronounced or an order
actually made, and, if for any reason, such judgment or order is
not recorded, then at any time afterward, upon proper notice be-
ing given to the parties interested and the facts being shown that
such judgment was pronounced or such order made, the court
may cause such order or judgment to be spread upon its records
as of the date it was pronounced or made." *Hyde v. Michelson,*
52 Neb. 680, followed.

2. ———: ———. "The provisions of section 609 of the Code of
Civil Procedure (Rev. St. 1913, sec. 8214) are not applicable to a
motion for an entry *nunc pro tunc* of a judgment or order." *Hyde
v. Michelson,* 52 Neb. 680, followed.

3. ———: INTEREST. Under the provisions of section 3348, Rev. St.
1913, a judgment based upon a note which bore interest at 10 per
cent. draws interest at the same rate from the date of the judg-
ment, although the rate of interest is not expressed in the judg-
ment.

4. ———: ———. Where the judgment is silent as to interest, it
is the duty of the clerk to ascertain from the record the rate of
interest which it bears. In determining this rate of interest, if
the cause of action is based upon a contract which calls for less
than 7 per cent., a judgment on such contract will bear 7 per cent.
interest. But, where the contract calls for 7 per cent. interest,
or more than 7 per cent. and not greater than 10 per cent., a
judgment based thereon will bear the rate of interest fixed by the
contract.

5. Evidence examined, and *held* sufficient to support the judgments.

APPEAL from the district court for Lancaster county:
WILLIAM M. MORNING, JUDGE. *Affirmed.*

*Fawcett & Mockett* and *Francis V. Robinson,* for ap-
pellant.

*O. B. Clark, contra.*

Heard before LETTON, DEAN and DAY, JJ., BLACKLEDGE and TEWELL, District Judges.

DAY, J.

As these two cases were briefed and argued together in this court, and the facts are substantially the same in each case, there seems to be no valid reason why they may not be disposed of in one opinion.

It appears that Edith Lair commenced an action in the district court for Lancaster county against Arthur J. Calloway upon a promissory note for $3,000, which, by its terms, was to bear interest at 10 per cent. per annum from date until paid. Pending the action the plaintiff married Montreville Doty, and thereafter the proceedings were conducted in the name of Edith Doty. On December 6, 1917, the plaintiff recovered a verdict for the amount of the principal sum, with interest at 10 per cent. from the date of the note. Thereupon the trial court entered a judgment as follows:

"It is therefore considered, ordered and adjudged by the court that, in accordance with the verdict of the jury herein, the plaintiff, Edith Lair, in her present name of Edith Doty, as ordered by the court, do have and recover of and from the defendant, Arthur J. Calloway, the said sum of $3,961.72, the amount assessed by the jury herein, together with the costs in this action, taxed at $48.70, for all of which execution is hereby awarded."

The defendant Calloway took an appeal from this judgment to this court, where the judgment was affirmed. A controversy then arose between the parties as to the rate of interest the judgment should bear. The defendant contended that, inasmuch as the judgment was silent as to the rate of interest it should bear, it drew interest at 7 per cent. from its date. The plaintiff, on the other hand, insisted that as the note provided for interest at 10 per cent. the judgment would bear interest at the same rate. On January 7, 1929, while this controversy over the interest rate was still on, the defendant paid into court the sum of $4,588.63, being the amount of the judgment with in-

Calloway v. Doty.

terest at 7 per cent. from its date, together with the costs, as taxed by the clerk. It afterwards developed that the clerk had omitted an item of $10.05 as a part of the costs. Counsel for the plaintiff received from the clerk of the court the $4,588.63, stating in his receipt that the amount was "to apply on judgment, interest and costs," and refused to satisfy and discharge the judgment of record. In July, 1920, the plaintiff had an execution issued for the balance which she claimed was still unpaid upon the judgment, upon the theory that it bore interest at 10 per cent. At this stage of the controversy Calloway brought an action against Edith Doty and Ira Miller, Sheriff, to enjoin the collection of any further sum upon the judgment, upon the theory that it had been fully paid, and further prayed that the execution be recalled, and that the judgment be satisfied and discharged of record. Before the restraining order became effective, the execution was returned *nulla bona*. Upon the trial of the injunction suit on November 26, 1920, the court dismissed the plaintiff's action, and further adjudged that Edith Doty was entitled to collect the amount of the judgment, $3,961.72, with interest at 10 per cent. from December 6, 1917, the date of the judgment. From this judgment Calloway has appealed, the case being No. 21944.

Referring now to case No. 21945, it appears that in January, 1920, Edith Doty filed a motion in the original action of Lair v. Calloway, praying for a *nunc pro tunc* order as of date December 6, 1917, inserting in the journal entry of the original judgment the words "interest at 10 per cent. per annum from this date, and," so that the judgment will read that the plaintiff "do have and recover of and from the defendant, Arthur J. Calloway, the said sum of $3,961.72, the amount assessed by the jury herein, together with interest at 10 per cent. per annum from this date, and the costs of suit in this action, taxed at $78.70, for all of which execution is herein awarded." Upon the hearing this motion was sustained, and the journal entry of the original entry corrected accordingly. From this order cor-

recting the journal entry, Calloway has appealed.

In the latter case, it is now urged by Calloway that the court had no jurisdiction to make the *nunc pro tunc* order, because more than three years had elapsed since the rendition of the original judgment. In support of this contention his counsel cites sections 8207 and 8214, Rev. St. 1913. Section 8207, so far as pertinent to the question raised, reads as follows:

"A district court shall have power to vacate or modify its own judgments or orders after the term at which such judgments or orders were made: * * * Third, for mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order."

Section 8214, is as follows: "Proceedings to vacate or modify a judgment or order, for the causes mentioned in subdivisions four, five and seven of section 648 of this Code (Rev. St. 1913, sec. 8207) must be commenced within two years after the judgment was rendered or order made, unless the party entitled thereto be an infant or person of unsound mind, and then within two years after removal of such disability. Proceedings for the causes mentioned in subdivisions three and six of the same section shall be within three years, and in subdivision nine within one year, after the defendant has notice of the judgment."

The question is then presented whether the sections of the statute above quoted were intended to operate as a limitation upon the power of a court to make a *nunc pro tunc* entry. It must be borne in mind that the proper function of a *nunc pro tunc* order is not for the purpose of correcting some affirmative action of the court which ought to have been taken, but its true purpose is to correct the record which has been made, so that it will truly record the action really had, but which through some inadvertence or mistake has not been truly recorded. In other words, it is an order to make the record speak the truth. As we view it, the sections of the statute cited have no application to a *nunc pro tunc* order. Those sections relate to proceedings to vacate or modify a judgment on account of

the mistake, neglect, or omission of the clerk, or irregularity in obtaining such judgment. But this is not an action to vacate or modify a judgment rendered. It is a proceeding to have spread upon the record a judgment which was in fact rendered but not truly recorded. The power of the courts to make a *nunc pro tunc* entry is an inherent power, and does not depend upon statute. In *Hyde v. Michelson,* 52 Neb. 680, it was held: "If, in any proceeding pending in a court, a judgment is actually pronounced or an order actually made, and, if for any reason, such judgment or order is not recorded, then at any time afterward, upon proper notice being given to the parties interested and the facts being shown that such judgment was pronounced or such order made, the court may cause such order or judgment to be spread upon its records as of the date it was pronounced or made." The same principle is announced in *Clark & Leonard Investment Co. v. Rich,* 81 Neb. 321.

The next question which arises is whether the evidence is sufficient to sustain the order. In *Harris v. Jennings,* 64 Neb. 80, it is held that, in the exercise of its power to correct its own record, the court is not confined to an examination of the minutes made by the trial judge, but may proceed upon any satisfactory evidence. While the showing made in the affidavit as to the finding of the court on the question of the rate of interest is in the nature of a conclusion, its correctness was not challenged in any way, and under the circumstances we think it must be held sufficient to sustain the action of the trial court.

The next question to be considered is whether the court erred in dismissing the injunction action brought by Calloway and in refusing to satisfy and discharge the judgment of record. This, of course, depends upon whether the judgment was fully paid. That there was still a portion of the costs due is admitted, but we are not disposed to base our conclusion upon that fact, as the failure to pay the entire costs was an oversight of the clerk. Section 3347, Rev. St. 1913, fixes the legal rate of interest upon all contract obli-

gations at 7 per cent. unless a greater rate, not exceeding 10 per cent., is agreed upon by the parties. Section 3348, Rev. St. 1913, provides, in substance, that all judgments and decrees for the payment of money shall bear interest at 7 per cent. from the date thereof, provided that where a judgment or decree is based upon a contract, by the terms of which a greater rate of interest than 7 per cent. shall have been agreed upon, not exceeding 10 per cent., such judgment or decree shall bear interest at the rate agreed upon in the contract. As the note bore interest at 10 per cent., it seems plain from the language of the statute above cited that a judgment upon this note must bear interest at the same rate. This section of the statute has been construed by this court on several occasions, and the rule is now well settled that, where the parties to a contract for the payment of money have not contracted for any rate of interest, or contracted for a rate of interest less than 7 per cent. per annum, a judgment based upon such contract will bear interest at the rate of 7 per cent. from the date of its rendition, and where the parties to a contract for the payment of money have agreed upon a rate of interest, lawful, greater than 7 per cent., a judgment based on such contract will draw interest at the contract rate. *Havemeyer v. Paul*, 45 Neb. 373; *Connecticut Mutual Life Ins. Co. v. Westerhoff*, 58 Neb. 379; *Trompen v. Hammond*, 61 Neb. 446.

But, besides all this, we do not think that it is necessary that there should be a recital in the judgment that it bear a particular rate of interest in order that the judgment creditor may collect interest on his judgment, as the statute fixes the rate of interest which the amount of the judgment bears in any given case. While it is the better practice that the court should specify the rate of interest which a judgment or decree shall bear in order to obviate a possible future contention, there is nothing in the law which seems to require that this be done. In *Evans v. Fisher*, 26 Mo. App. 541, under a statute substantially the same as ours, it was said: "The rate of interest which a judg-

ment shall bear is a quality which the statute ascribes to the judgment, and it is not a necessary part of the judgment entry; and where it is not shown by the judgment entry, it is the duty of the clerk to ascertain from the record the interest which the judgment shall bear, and to issue execution accordingly; and where he refuses to perform his duty, the circuit court can direct him so to do on motion, or the defendant can compel him to do so by mandamus. *State v. Vogel,* 14 Mo. App. 187." When, therefore, the plaintiff applied to the clerk of the court for an execution for the unpaid balance due upon the judgment, it was not only proper for the clerk, but it was his duty, to ascertain from the record what rate of interest the amount of the judgment bore and issue an execution accordingly. In this case there was no basis for a difference of opinion upon that question. The note upon which the cause of action was founded bore interest at 10 per cent. and the plaintiff was entitled to interest upon the judgment at the same rate. In cases where there is uncertainty as to the rate of interest, it would be proper for the clerk to apply to the court for an interpretation of the judgment.

It follows from what has been said that the plaintiff, Edith Doty, was within her legal rights in demanding that an execution issue for the balance due upon the judgment, arising from the difference between 7 per cent., which was paid, and 10 per cent., which the judgment bore; and that, therefore, the injunction prayed for by Calloway, as well as his request that the judgment be satisfied and discharged of record, were properly denied. It also follows that the court properly issued the *nunc pro tunc* order.

The judgment of the lower court in each case is

AFFIRMED.